IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DALI WIRELESS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-0012-RWS-RSP |
| | § | (Lead Case) |
| AT&T CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is AT&T[1], CommScope[2], and Ericsson's[3] (collectively, "Defendants") Motion to Sever and Stay Pending Resolution of Supplier Lawsuits. **Dkt. No. 77**.[4] After filing the motion, the parties stipulated to sever the action into two actions: (1) AT&T and its supplier CommScope, and (2) AT&T and its supplier Ericsson, and then consolidate the two cases for pretrial purposes. Dkt. No. 79. Accordingly, the Court **GRANTS-IN-PART** the motion to sever the action and reconsolidate the cases in accordance with the terms set forth in the stipulation. The remaining request in the motion is to stay the severed cases as to AT&T, and the Court **DENIES** that request for the following reasons.

**I.     BACKGROUND**

On January 1, 2022, Plaintiff Dali Wireless, Inc. filed this action alleging AT&T, CommScope, and Ericsson infringe four of Dali's patents: (1) United States Patent No.

---

[1] "AT&T" includes Defendants AT&T Corp., AT&T Communications LLC, AT&T Mobility, AT&T Mobility II LLC, and AT&T Services Inc.

[2] "CommScope" includes Defendants CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC.

[3] "Ericsson" includes Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson.

[4] Citations correspond to those assigned via ECF.

1

8,682,338 (the "'338 Patent"), (2) United States Patent No. 9,197,358 (the "'358 Patent"), (3) United States Patent No. 11,026,232 (the "'232 Patent"), and (4) United States Patent No. 10,334,499 (the "'499 Patent") (collectively, the "Asserted Patents").[5] In each cause of action, Dali asserts that AT&T directly infringes and its component manufacturer—CommScope or Ericsson—indirectly infringes.[6] In four of the six causes of action, Dali asserts method claims that relate to AT&T's use of Ericsson's or CommScope's products in its network.[7]

## II. LAW

District courts have the power to stay proceedings as part of its inherent power to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the context of a patent case, courts may decide to stay an action under the customer-suit exception or Rule 21. Alternatively, courts may stay an action if the traditional stay factors support that result.

### A. Customer Suit Exception and Rule 21

Generally, courts follow the "first-to-file" rule in deciding which of two overlapping cases filed in different courts should proceed and which court should stay its hand. However, an exception to this first-to-file rule, known as the customer-suit exception, generally applies to cases in which a patentee filed an action against the retailers of an accused product (mere "customers' of the manufacturer), after which the manufacturer of the product filed a declaratory

---

[5] Complaint, Dkt. No. 1 at ¶¶ 1–7.

[6] *Id.* at ¶¶ 76, 79 (First Cause of Action – Infringement of the '358 Patent by AT&T and CommScope), ¶¶ 104, 107 (Second Cause of Action – Infringement of the '338 Patent by AT&T and Ericsson), ¶¶ 127, 130 (Third Cause of Action – Infringement of the '232 Patent by AT&T and CommScope), ¶¶ 150, 153 (Fourth Cause of Action – Infringement of the '232 Patent by AT&T and Ericsson), ¶¶ 182, 185 (Fifth Cause of Action – Infringement of the '499 Patent by AT&T and Ericsson), ¶¶ 214, 217 (Sixth Cause of Action – Infringement of the '499 Patent by AT&T and CommScope).

[7] *Id.* at ¶¶ 56–57 (asserting Claim 7 of the '358 patent—a method), ¶¶ 84–85 (asserting Claim 1 of the '338 patent—a method), ¶¶ 112–13, 135–136 (asserting Claim 12 of the '232 patent—a method).

judgment action against the patentee in a different forum. In that circumstance, courts sometimes approve proceeding with the case against the manufacturer and staying the first-filed action against the customer. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (discussing the exception but declining to apply it where there was no evidence that the later-filed action "would resolve all charges against the customers in the stayed suit, including liability for damages").

The customer-suit exception has also been applied in multi-defendant actions in which the manufacturer and retailers are defendants in the same case. In those cases, the customer-suit exception has been cited as the basis for severing the action against the retailers from the action against the manufacturer and transferring the action against the manufacturer to a venue where suit against the retailer defendants could not have been brought. The theory underlying that course of action is that the manufacturer is the "true defendant" and the retailer is merely a "peripheral defendant." *See Spread Spectrum Screening LLC v. Eastman Kodak Co.,* 657 F.3d 1349 (Fed. Cir. 2011).

Courts have often declined to apply the customer-suit exception in cases in which the manufacturer is charged as the indirect infringer of a method patent and the retailer is charged as the direct infringer. *SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-cv-0295, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019) (finding the customer-suit exception inapplicable to the case because claims against the manufacturer and non-manufacturer defendants are not identical); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2016 U.S. Dist. LEXIS 55205, *10 (E.D. Tex. Apr. 26, 2016) (collecting cases) (finding the customer-suit exception does not apply to sever an action into separate cases against Eli Lilly (manufacturer) and Brookshire (distributor) and then stay the case as to Brookshire because (1) Brookshire was accused of

directly infringing a method of treatment and (2) a finding that Eli Lily is liable for induced infringement would not necessarily mean that Brookshire is liable for direct infringement); *but see Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *5 (E.D. Tex. Oct. 19, 2016) (severing and staying direct infringement claims against Mouser (mere distributor/reseller) pending resolution of direct and indirect infringement claims against the "true defendant" Power Integrations (manufacturer) because a finding that Power Integrations infringes is a prerequisite to recovery from Mouser).

Even when the customer-suit exception does not strictly apply, courts have analyzed whether Rule 21 applies to sever and stay a case. *Compare Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82, 2017 WL 3712912, at *1–2 (E.D. Tex. July 12, 2017) (severing and staying claims against resellers AT&T and Verizon pending resolution of infringement claims against Apple regarding speech encoding and decoding technology in cellphones under Rule 21 because the claims against AT&T and Verizon were peripheral to those against Apple) *with SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-cv-0295, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019) (declining to sever and stay claims as to reseller and customer defendants that were not peripheral to the claims against the manufacturer). In such circumstances, courts consider two factors: (1) whether the remaining claims are peripheral to the severed claims, and (2) whether adjudication of the severed claims would potentially dispose of the remaining claims. *Saint Lawrence Commc'ns LLC*, 2017 WL 3712912, at *2 (quotations and citations omitted); *SAS Inst. Inc.*, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019) (quotations and citations omitted).

### B.  Traditional Stay Factors

Separate from the customer-suit exception and Rule 21, courts may also decide to stay an

action based on the traditional stay factors, which include (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issue in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495-WCB, 2018 WL 4002776, at *3 (E.D. Tex. Aug. 22, 2018) (quotations and citations omitted).

### III.   ANALYSIS

Defendants seek to stay the cases as to AT&T on two separate grounds that are addressed in the manner presented in the briefing: (A) the customer-suit exception and severance under Rule 21, and (B) the traditional stay factors.

#### A.  Customer-Suit Exception and Severance Under Rule 21

Defendants' reliance on the customer-suit exception to stay the cases as to AT&T is misplaced. First, unlike essentially all of the cited cases in the briefing applying the customer-suit exception, Defendants do not seek to transfer the claims against Ericsson or CommScope to another venue. Rather, as part of the stipulation regarding severance as to the two cases—the first case with AT&T and Ericsson and the second case with AT&T and CommScope—the parties have agreed not to challenge venue.[8]

Second, this case involves two manufacturers, Ericsson and CommScope, each of which supplies components to a customer, AT&T. In contrast to *Opticurrent* in which Mouser was a mere reseller, 2016 WL 9275395, at *5, AT&T in this case is accused of direct infringement by using the components in its telecommunications network. AT&T is more than a mere reseller. Four of the six causes of action accuse the customer, AT&T, of directly infringing method claims while accusing the manufacturer, Ericsson or CommScope, of indirectly infringing the

---

[8] Stipulation, Dkt. No. 79 at 2 ("3. Following severance, no Defendant will move to transfer venue to any other court.")

method claims.⁹ Similarly, the two causes of action concerning system claims accuse AT&T of direct infringement and either Ericsson or CommScope of indirect infringement.¹⁰ AT&T's agreement to be bound by the Court's findings as to infringement by CommScope and Ericsson and invalidity arguments raised by the same does not eliminate the potential need to adjudicate AT&T's direct infringement of the asserted method claims. Thus, this case also does not fall within the customer-suit exception because the core allegations of the complaint are directed to the role of AT&T as the direct infringer and Ericsson or CommScope as the indirect infringer. *Eli Lilly & Co.*, 2016 U.S. Dist. LEXIS 55205, *12.

Third, the rationale to stay under Rule 21 does not apply to this circumstance. Since AT&T is accused of directly infringing multiple method claims involving the use of the accused products, the claims against AT&T are not peripheral to those against the manufacturers Ericsson and CommScope. Accordingly, adjudication of the claims against Ericsson and CommScope would not necessarily resolve those against AT&T.

In sum, neither the customer-suit exception nor severance under Rule 21 supports staying the cases as to AT&T.

### B. Traditional Stay Factors

The first factor—whether a stay will prejudice the nonmoving party—weighs against a stay. In contrast to Defendants' assertions that Dali will not be prejudiced by a stay as to AT&T, the stay would limit Dali's ability to pursue its direct infringement claims against AT&T.

---

⁹ Complaint, Dkt. No. 1 at ¶¶ 76, 79 (accusing CommScope of indirectly infringing method claim 7 of the '358 Patent), ¶¶ 104, 107 (accusing Ericsson of indirectly infringing method claim 1 of the '338 Patent by AT&T and Ericsson), ¶¶ 127, 130 (accusing CommScope of indirectly infringing method claim 12 of the '232 Patent), ¶¶ 150, 153 (accusing Ericsson of indirectly infringing method claim 12 of the '232 Patent).

¹⁰ *Id.* at ¶¶ 182, 185 (accusing Ericsson of indirectly infringing system claim 1 of the '499 Patent), ¶¶ 214, 217 (Accusing CommScope of indirectly infringing system claim 1 of the '499 Patent).

Additionally, Defendants themselves acknowledge that discovery as to AT&T becomes more convoluted upon granting the stay.[11] To overcome the added hurdle, Defendants propose that Ericsson or CommScope would serve as intermediaries for any discovery Dali seeks to serve on AT&T.[12] Regardless of a stay as to AT&T, Dali would seek to obtain discovery from AT&T to establish a reasonable royalty based on AT&T's use of the accused products. Dali would be prejudiced by a stay that would mitigate affirmative obligations under the Court's Discovery Order. Thus, the first factor weighs against a stay.

The second factor—whether a stay will simplify the issue in question and trial of the case—weighs slightly against a stay. Staying claims against customers generally increases efficiency and judicial economy, but this is a circumstance with a common customer accused of direct infringement and two manufacturer suppliers accused of indirect infringement. AT&T agrees to be bound by infringement determinations affecting CommScope and Ericsson, and invalidity determinations adjudicated on the merits.[13] In isolation, AT&T's agreement to be bound weighs in favor of a stay. Nevertheless, resolving the infringement and damages issues as to Ericsson and CommScope will not necessarily resolve all the issues as to AT&T. Since issues may still remain as to AT&T, the second factor weighs against a stay. *Rembrandt Wireless Techs., LP v. Apple Inc.*, 2019 U.S. Dist. LEXIS 205698, *11–*12 (E.D. Tex. Nov. 27, 2019) (finding that staying the case as to Apple pending resolution of a suit against component manufacturers Broadcom and Qualcom would not simplify issues for trial because Apple was accused of direct infringement whereas Broadcom and Qualcomm were accused of indirect infringement).

The third factor—whether discovery is complete and whether a trial date has been set—

---

[11] *See* Motion to Sever and Stay, Dkt. No. 77 at 15.
[12] *Id.*
[13] Motion to Sever and Stay, Dkt. No. 77 at 15.

also weighs against a stay. The deadline for fact discovery is June 1, 2023, and trial is set for October 16, 2023.[14] Discovery is underway, but the parties had until March 30, 2023 to substantially complete document production and exchange privilege logs.[15] Litigation having advanced to some extent since the filing of the complaint does not mean it has progressed so far as to preclude a stay. *See NFC Tech.*, 2015 WL 1069111, at *3, *8 (granting a motion to stay even though "the parties had engaged in significant discovery, and claim construction briefing was complete").

In the aggregate, the traditional stay factors reinforce the conclusion that a stay is not warranted.

## IV.   CONCLUSION

For the reasons above, the Motion to Sever and Stay (Dkt. No. 77) is **GRANTED-IN-PART** as to severing the action into one case against AT&T and CommScope and another case against AT&T and Ericsson, and consolidating the cases for pre-trial purposes in accordance with the terms set forth in the Stipulation (Dkt. No. 79). The Clerk of Court is directed to (1) open a new case between Plaintiff Dali Wireless, Inc. and Defendants AT&T Corp., AT&T Communications LLC, AT&T Mobility, AT&T Mobility II LLC, AT&T Services Inc, Ericsson Inc. and Telefonaktiebolaget LM Ericsson, (2) terminate Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson from the above-captioned case, and (3) consolidate the severed case with the above-captioned lead case for pretrial purposes. The parties shall continue filing in

---

[14] Fourth Amended Docket Control Order, Dkt. No. 114 at 1, 3.
[15] Motion to Sever and Stay, Dkt. No. 77 at 15; Fourth Amended Docket Control Order, Dkt. No. 114 at 4.

the above-captioned lead case. The remaining request to stay the severed cases as to AT&T is **DENIED**.

**SIGNED this 8th day of April, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE